IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

VERNON ERNEST DORIAN CEPHAS,   :
                               :
    Plaintiff,                :
                               :
v.                             : Civil Action No. 18-851-RGA
                               :
WARDEN DANA METZGER, et al.,   :
                               :
    Defendants.               :

---

Vernon Ernest Dorian Cephas, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

**MEMORANDUM OPINION**

October 1, 2018
Wilmington, Delaware

*signature*
**ANDREWS, U.S. District Judge:**

Plaintiff Vernon Ernest Dorian Cephas, an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 3). He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 7). The Court screens and reviews the complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(a).

## BACKGROUND

Plaintiff complains of actions taken when he was both an unsentenced detainee and a sentenced inmate at the JTVCC.[2] Count One of the Complaint alleges deliberate indifference to medical needs in violation of the Eighth and Fourteenth Amendments;[3] Count Two alleges retaliation in violation of the First Amendment; and Count Three alleges denial of the right to due process in violation of the Fourteenth Amendment. On September 4, 2018, Plaintiff filed an amendment that added claims against two new

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] Plaintiff was found guilty on September 13, 2016, following a jury trial in the Superior Court of the State of Delaware in and for Kent County, and sentenced on December 13, 2016. *See State v. Cephas*, ID #150303005476 (Del. Super.). A convicted but unsentenced inmate has the same status under the Constitution as a pretrial detainee. *See Fuentes v. Wagner*, 206 F.3d 336 (3d Cir. 2000).

[3] As a pretrial detainee, the claim is brought under the Fourteenth Amendment, but analyzed under an Eighth Amendment standard. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003) (a pretrial detainee's claim of deliberate indifference to serious medical needs under the Due Process clause of the Fourteenth Amendment is analyzed under the standard for similar claims under the Eighth Amendment).

defendants. (D.I. 9). The Court considers D.I. 3 and D.I. 9, together, as the operative pleading.

**Count One, Medical Needs.** On the morning of September 19, 2016, Plaintiff complained of breathing problems and chest pains. (D.I. 3 at 6). He was taken to the nurses' station and examined. The nurse contacted Defendant physician's assistant Deadra Parker, and Parker ordered an EKG and an x-ray. (*Id.* at 7). That morning, Parker told Plaintiff there was nothing wrong with him based upon the EKG results and she diagnosed Plaintiff with pneumonia. (*Id.*). Plaintiff complains that Parker did not personally evaluate, treat, or assess him. (*Id.*). Plaintiff returned to his housing unit that morning.

Plaintiff continued to complain that he was struggling to breathe. (*Id.*). During the 3:00 p.m. count, Plaintiff told the unit officer that he could not breathe. (*Id.*). Plaintiff was taken to the infirmary, and nurses took his vitals. (*Id.* at 8) Parker entered the room and told Plaintiff he had pneumothorax on the left side. (*Id.*). Plaintiff was taken to Bayhealth Kent General Hospital by ambulance. (*Id.*). Plaintiff underwent an emergency procedure that afternoon, had surgery on September 23, and was discharged on September 27, 2016. (*Id.* at 8-9).

Plaintiff alleges that Defendant Connections Community Services, the contract healthcare provider for the Delaware Department of Correction: (1) failed to adequately staff the JTVCC medical unit, which causes delays in providing inmates with treatment; (2) instituted a set of rules, policies, and protocols that all medical staff diagnose inmates "based on word of mouth rather than actual evaluation," and that Parker followed those policies that when she diagnosed Plaintiff with pneumonia without

"touching or evaluating" him; and (3) did not have appropriate safeguards in place to insure test results are timely read. (*Id.* at 8-9). Plaintiff alleges that the combined failures of Connections and Parker caused him pain and suffering in violation of his constitutional rights. (*Id.* at 9).

**Count Two, Retaliation**. Plaintiff ran out of medication on February 14, 2017, and submitted a sick call request late that afternoon. (*Id.* at 10). Plaintiff did not report this as an emergency. (*Id.*). The next morning, Defendant R.N. Amy Malkin had Plaintiff taken to medical for triage, and she addressed the sick call request as an emergency. (*Id.*) When Plaintiff arrived, he explained to Malkin that it was not an emergency. (*Id.*). Malkin was "upset" and put Plaintiff out of triage. (*Id.* at 11). Plaintiff submitted a grievance over the matter. (*Id.*). Plaintiff alleges that after he submitted the grievance he received inadequate medical care and was without medication for months. (*Id.*)

Plaintiff alleges that he spoke to Defendant Deputy Warden Scarborough about a rash and explained he had been unsuccessful in getting it treated. (*Id.* at 12). Scarborough advised Plaintiff that he would email someone in medical so that Plaintiff would be seen. (*Id.*). Plaintiff states, "This too was unsuccessful." (*Id.*). Plaintiff wrote to Defendant Warden Dana Metzger that he was not getting proper medical care and had not received assistance from Scarborough. (*Id.*). Plaintiff continued to seek treatment and file grievances. (*Id.*).

Plaintiff alleges that Scarborough transferred him from minimum to medium high security (*i.e.*, MHU") on October 18, 2018, in retaliation for the letter he sent to Metzger complaining about Scarborough's failure to assist Plaintiff in obtaining medical care. (*Id.*

3

at 17). Plaintiff alleges Metzger was made aware of Scarborough's reprisal and did nothing to intercede or correct the wrongdoing. (*Id.*).

On October 6, 2017, Plaintiff awoke with extreme chest pains and asked the building sergeant to call medical. (*Id.* at 13). He was taken to medical and triage began. (*Id.*). Malkin and Defendant R.N. Tyler Bohanan were in medical and, when Malkin saw Plaintiff, she commented that Plaintiff was "just complaining to get his KOP's [*i.e.*, keep on person medications]" and asked if he remembered doing this before. (*Id.* at 13-14). Malkin took Plaintiff's blood pressure, told the other nurse to perform an EKG, and scheduled a chest x-ray. (*Id.* at 14).

Bohanan, who had been in the office, came out and asked Plaintiff if he was really there to get KOP's through the provider. (*Id.* at 15). Plaintiff told Bohanan that he knew how to use the process to get refills. (*Id.*) Bohanan returned to the office, came back a few minutes later and asked the officer escorting Plaintiff if he had to tell Plaintiff that [Bohanan] was writing him up. (*Id.*). Plaintiff returned to his housing unit and submitted a grievance, # 381129. (*Id.*) He never received the write-up (*i.e.*, disciplinary report) from Bohanan. (*Id.*).

The Medical Department received Plaintiff's grievance on October 11, 2017. (*Id.*). On October 15, 2017, Plaintiff was told to report to the Lieutenant's Office and was formally notified of Bohanan's disciplinary report. (*Id.*). The report stated that Plaintiff lied about having chest pains and gave a false alarm on October 6, 2017. (*Id.* at 15-16). The disciplinary report referred to Plaintiff's February 15, 2017 medical visit when Malkin accused Plaintiff of seeing medical on an emergency basis to receive K.O.P. (*Id.* at 16). Plaintiff alleges that Bohanan's disciplinary report was not logged

4

until after Plaintiff's grievance was received by medical. (*Id.* at 16). He alleges that Bohanan and Malkin conspired to file the false disciplinary report against him and punish him for submitting medical grievances against them. (*Id.* at 15, 17).

**Count Three, Due Process.** On October 15, 2017, Plaintiff was awakened in the early morning and told to report to the Lieutenant's Office. (*Id.*). Defendant Lt. Tony Benson told Plaintiff he had been written up on October 6, 2017, and the write-up had been placed in the system a few days earlier. (*Id.* at 18). Plaintiff alleges this violated the rules of conduct which provide that disciplinary reports should be submitted before the end of the shift, but no later than 24 hours after the incident. (*Id.*). Plaintiff alleges that Benson's failure to give him notice of the disciplinary report within 24 hours violated his right to due process under the DOC Rules of Conduct 4.1 and the Fourteenth Amendment. (*Id.*). He alleges that Benson had a duty to stop the outdated disciplinary report from moving forward. (*Id.* at 23).

On October 18, 2017, at approximately 11:40 a.m., Plaintiff was told that Scarborough had directed his transfer to MHU. (*Id.* at 19). As Plaintiff was packing to move, he was called downstairs at 12:40 p.m. (*Id.*). Defendant Lt. Stevenson was waiting downstairs to conduct a disciplinary hearing on the Bohanan disciplinary report Plaintiff had received on October 15, 2017. (*Id.*). Plaintiff told Stevenson the hearing was scheduled in violation of Rules of Conduct Policy 4.2, and Stevenson responded that there was no time limit on hearings. (*Id.*). Plaintiff alleges that he was not allowed to call witnesses or have an investigation. (*Id.*) Stevenson found Plaintiff guilty "based on report." (*Id.*) Plaintiff alleges that Stevenson had a duty to dismiss the disciplinary report because the hearing was not held until 12 days after the incident, Stevenson

5

failed to give adequate findings of guilt, and he did not allow Plaintiff to call witnesses and have access to documents. (*Id.* at 23). Plaintiff was sentenced to five days confinement to quarters and 15 days loss of all privileges. (*Id.* at 20). Plaintiff was moved to the MHU tier at 1:30 p.m. (*Id.* at 20).

Plaintiff appealed, and on October 24, 2017, Defendant Captain Bruce Burton heard the appeal and affirmed the finding of guilt. (*Id.*). The next day, Plaintiff was reclassified because of the write-up. (*Id.*). Plaintiff alleges the write-up served as justification for his transfer from minimum security to MHU.[4] (*Id.*)

When Plaintiff noticed there had been no response to grievance # 381129, he reinitiated the process and was told the grievance was abandoned for his failure to appear at the hearing. (*Id.*). Plaintiff alleges that he had no notice and when he refiled the grievance, he was told that it was a disciplinary matter. (*Id.* at 21-22). Plaintiff spoke to Defendant Deputy Warden Parker who told Plaintiff he would look into it. (*Id.* at 22). Plaintiff next wrote to Metzger about the retaliation by the medical staff and Scarborough, who had Plaintiff transferred. (*Id.*). Both Metzger and Parker responded to Plaintiff's complaints by letter. (*Id.*). Plaintiff alleges that Burton, Parker, and Metzger all could have "restored the Plaintiff to whole" through the appeal process. (*Id.* at 23).

---

[4] Plaintiff alleges that Scarborough claims Plaintiff was transferred to MHU because of his medical condition. (*Id.* at 21). Plaintiff alleges Scarborough's actions were designed to punish him for writing the letter of complaint to Metzger and that Scarborough would not have moved him had he never written the letter. (*Id.* at 24). These are basically the same allegations as found in Count Two.

**Amendment**. Plaintiff alleges he was denied appropriate follow-up care prescribed upon his release from Bayhealth. (D.I. 9 at 2). He alleges he has complained to Defendant Dr. Adrian Harewood since October 2017 about continued pain in the left/right arm, jaw pain, and heart palpitations. (*Id.*). Plaintiff alleges that Dr. Harewood consistently refuses to treat him, or could not treat him, and refuses to send him to a specialist. (*Id.*).

Plaintiff submitted a medical grievance that was reviewed by Defendant DOC Healthcare Services Bureau Chief Mark Richman, who denied it. (*Id.* at 3). Plaintiff became aware that he has coronary artery disease, notified Richman, and asked for heart tests. (*Id.*) His request was denied. (*Id.*) Plaintiff sought the test because he was scared and wanted to see if the disease had progressed. (*Id.*). Plaintiff also alleges that he is not receiving treatment for his high blood pressure and high cholesterol. (*Id.*)

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. He had also filed a request for counsel. (D.I. 5).

## SCREENING OF COMPLAINT

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). *See also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison

conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94.

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive

8

plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

**Medical Needs.** Plaintiff raises medical needs claims for incidents that occurred when he a pretrial detainee and a sentenced inmate. The standard for evaluating a claim for inadequate medical care is the same under either status. *See* n.3 *supra*. As a pretrial detainee, the Due Process Clause of the Fourteenth Amendment affords Plaintiff protection for his medical needs claim, *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977), and as a sentenced inmate, the Eighth Amendment affords him protection for his medical needs claims. *Estelle v. Gamble*, 429 U.S. 97 (1976). *See also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. at 103-05. In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "prison official may manifest deliberate indifference by intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05. However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *United States ex rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979).

"A prisoner does not have the right 'to choose a specific form of medical treatment.'" *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under
§ 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. at 107. In addition, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990);

10

see also *Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation).

Plaintiff complains that on September 19, 2016, Parker did not personally examine him and that her delay in treating him, as well as her initial diagnosis, based upon Connections' policies and protocols, constitute deliberate indifference to his serious medical needs. The allegations are Plaintiff received medical care. The morning of September 16, 2016, Parker ordered testing and initially diagnosed pneumonia after reviewing an EKG. Later that day, following Plaintiff's continued complaints of shortness of breath, she made a second diagnosis of pneumothorax. Plaintiff was immediately transferred to Bayhealth. As alleged, neither Parker nor Connections violated Plaintiff's constitutional rights. Therefore, Count One will be dismissed as frivolous.

The amendment alleges that once Plaintiff realized he had coronary artery disease he asked Richman for testing. Plaintiff indicates the diagnosis scared him, and he wished to see how the disease had progressed. His request was denied. There are no allegations that testing was necessary. Instead, the allegations are that Plaintiff wanted the testing because he was scared. The claim is frivolous and will be denied.

Plaintiff also alleges he has high blood pressure and high cholesterol, but "medical" refuses to treat the condition. Refusing to treat a medical condition can state a medical needs claim under § 1983. However, the sparse allegations do not refer to any individuals or when the alleged refusal to treat the condition occurred. Therefore, this claim will be dismissed for failure to state a claim upon which relief may be granted

pursuant to U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Plaintiff may amend the high blood pressure/cholesterol claim.

Finally, Plaintiff alleges that he has had complaints of pain since October 2017, but Dr. Harewood has consistently refused to, or could not, treat the condition, and refuses to send Plaintiff to a specialist. Liberally construing the allegations, Plaintiff states a medical needs claim against Dr. Harewood.

**Retaliation.** Plaintiff alleges that Malkin and Bohanan denied him medical care and conspired to serve him with a disciplinary report in retaliation for Plaintiff's having submitted grievances complaining of actions that took place in the medical department. He also alleges Scarborough transferred Plaintiff to MHU in retaliation for Plaintiff's letter of complaint to Metzger. Plaintiff alleges Metzger did nothing to intercede after he was notified of Scarborough's actions.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." *White v. Napoleon*, 897 F.2d at 111-12. Proof of a retaliation claim requires that a plaintiff demonstrate: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights").

The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly

retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *Id.* at 334.

The Complaint refers to two forms of speech; grievances and letters. There is no dispute that grievances are a form of protected speech. In screening this claim, the Court assumes, without deciding, that the letter is a form of protected speech. It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981).

Hence, Plaintiff has met the first element of a retaliation claim. In addition, the allegations in the Complaint against Malkin, Bohanan, and Scarborough also successfully satisfy the second and third prongs of the prima facie test. Plaintiff's lack of medical care, receipt of a disciplinary infraction, and transfer to MHU all may qualify as adverse treatment for the purposes of a retaliation claim. *See Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003) (prisoner's transfer to administrative segregation qualified as adverse action). Further, Plaintiff has alleged causation through the

13

suggestive timing of the punishment. Plaintiff will be allowed to proceed with the retaliation claims against Malkin, Bohanan, and Scarborough.

The retaliation claim against Metzger, however, fails to state a claim. There are no allegations that Metzger was aware of Scarborough's alleged act of retaliation prior to the time it occurred. At most, Plaintiff alleges that Metzger took no corrective action, but this does not state a retaliation claim. Therefore, the retaliation claim against Metzger will be dismissed for failure to state a claim upon which relief may be granted pursuant to U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Plaintiff will be given leave to amend the retaliation claim against Metzger.

**Due Process**. Plaintiff alleges violations of his right to Due Process when he was not timely served with a disciplinary report, a hearing was held in an untimely manner, he was not allowed to call witnesses or to have an investigation, and a grievance he submitted was deemed abandoned and when resubmitted deemed a disciplinary matter. The grievance issue will be addressed in a later section of this memorandum opinion.

The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin v. Connor*, 515 U.S. 472, 480 (1995). State-created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 484).

In deciding whether a protected liberty interest exists under *Sandin*, a federal court must consider the duration of the disciplinary confinement and the conditions of

that confinement in relation to other prison conditions. *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003) (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). With regard to the sanctions imposed upon the finding of guilt, Plaintiff fails to state a constitutional claim on the facts alleged. *See Fantone v. Herbik*, 528 F. App'x 123, 129 (3d Cir. 2013) (no procedural due process claim when inmate complained of 35 days in isolation, the court stating, "we have held that this type confinement does not constitute an "atypical and significant hardship" so as to trigger due process rights."). Here Plaintiff was sentenced to five days confinement in his cell and 15 days loss of all privileges.

To the extent Plaintiff alleges that he did not receive the procedural due process he was due, again he cannot prevail. If "restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law,' the prisoner does not have a "protected liberty interest" and the "state owes him no process before placing him in disciplinary confinement." *Mitchell v. Horn*, 318 F.3d at 531; *see also Henderson v. Kerns-Barr*, 313 F. App'x 451, 452 (3d Cir 2008) (sanction of 90 days disciplinary confinement did not implicatea liberty interest). According to the allegations in the complaint, Plaintiff was confined to his quarters for five days, an amount of time that does not implicate a protected liberty interest.

With regard to his classification from minimum security housing to MHU, it is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209 (2005); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). The custody placement or classification of

15

state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *See Harris v. McMullen*, 609 F. App'x 704, 705 (3d Cir. 2015) (citation omitted). Plaintiff lacks the requisite liberty interest to implicate a due process violation and, therefore, his claim fails.

The Complaint fails to articulate a protected liberty interest with respect to Plaintiff's discipline, confinement, and classification. Therefore, the Court will dismiss the Due Process claims raised in Count Three against Benson, Stevenson, Burton, and Metzger as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

**Grievance Process**. In Count Three, Plaintiff alleges he was told grievance # 381129 was deemed abandoned for his failure to appear. When he resubmitted the grievance, he was told it was disciplinary matter, and it was not processed. Plaintiff spoke to Parker about the grievance and wrote letters of complaint to Metzger and Parker about disciplinary matters, security matters, and retaliation. In the amendment, Plaintiff complains that Richman reviewed Plaintiff's grievance that asked for heart tests. Plaintiff's request was denied.

The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006). To the extent that Plaintiff bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutional right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011). Nor does the denial of a grievance appeal, in itself, give rise to a

constitutional claim as Plaintiff is free to bring a civil rights claim in District Court. *Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009).

Finally, participation in the after-the-fact review of a grievance is not enough to establish personal involvement. *See, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa.1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, not properly investigated, denied, or that the grievance process is inadequate, or the responses were inadequate. Therefore, the Court will dismiss the grievance claims against Parker, Metzger, and Richman as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

**Request for Counsel.** Plaintiff seeks counsel on the grounds that he is unable to afford counsel, the issues are complex, he has limited access to the law library, his attempts to retain counsel have been unsuccessful, and he has limited knowledge of the law and medical issues, he needs counsel to assist in discovery, he has made a jury demand, and there will be conflicting testimony. (D.I. 5, 6). A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.[5]

---

[5]*See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling

17

See *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. See *Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

It is generally premature to appoint counsel before Defendants have appeared in a case, as the Court does not have a sound basis to determine that the claims have merit in fact and in law. I also note, after reviewing Plaintiff's complaint, that Plaintiff has ably represented himself to date. Therefore, the Court will deny Plaintiff's request

---

attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

18

for counsel without prejudice to renew. Should the need for counsel arise later, one can be sought at that time.

## CONCLUSION

For the above reasons, the Court will: (1) deny without prejudice to renew Plaintiff's request for counsel (D.I. 5); (2) dismiss Defendants Connections Community Support Programs, Inc., Physician Assistant Deadra Parker, Marc Richman, Deputy Warden Parker, Captain Bruce Burton, Lt. Tony Benson, Lt. Stevenson, Warden Dana Metzger, and Counts One and Three as frivolous and for failure to state claims pursuant to U.S.C. § 1915(e)(2)(B)(i) and (ii) and § 1915A(b)(1); (3) allow Plaintiff to proceed against Dr. Adrian Harewood on the medical needs claim and Deputy Warden Scarborough, R.N. Tyler Bohanan, and R.N. Amy Malkin on the retaliation claim; (4) give Plaintiff leave to amend the medical needs claim for refusing to treat his blood pressure condition and high cholesterol, as well as the retaliation claim against Warden Dana Metzger.

An appropriate Order will be entered.