IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

VERNON ERNEST DORIAN CEPHAS, :
:
    Plaintiff, :
:
v. : Civil Action No. 18-851-RGA
:
DEPUTY WARDEN SCARBOROUGH :
et al., :
:
    Defendants. :

Vernon Ernest Dorian Cephas, James T. Vaughn Correctional Center, Smyrna, Delaware.   Pro Se Plaintiff.

Rebecca Song, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendant Deputy Warden Scarborough.

Dana Spring Monzo, Esquire, and Emily Kara Silverstein, Esquire, White & Williams, Wilmington, Delaware.   Counsel for Defendant R.N. Amy Malkin.

**MEMORANDUM OPINION**

February 7, 2022
Wilmington, Delaware


ANDREWS, U.S. District Judge:

Plaintiff Vernon Ernest Dorian Cephas, an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 3). He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 7). The operative pleading consists of Docket Items 3, 9, 10 (sealed medical records), and 19. (*See* D.I. 21 at 10; D.I. 22). Pending motions are a motion for summary judgment and motion to strike, both filed by Defendant Deputy Warden Scarborough. (D.I. 139, 152). The matters have been fully briefed.

## BACKGROUND

This matter proceeds on Count Two, a retaliation claim in violation of the First Amendment against Defendant.[2] Plaintiff complains of actions taken both when he was an unsentenced detainee and a sentenced inmate at the JTVCC.[3] The claim against Defendant is raised against him in his individual and official capacities.

As alleged, Plaintiff spoke to Defendant about a rash and explained he had been unsuccessful in getting treatment. Defendant advised Plaintiff that he would email

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] Plaintiff also raises a medical needs claim against nurse Amy Malkin. (D.I. 21 at 10). Claims against nurse Malkin are stayed due to the suggestion of bankruptcy of Connections Community Support Programs, Inc. (*See* D.I. 136, 144).

[3] Plaintiff was found guilty on September 13, 2016, following a jury trial in the Superior Court of the State of Delaware in and for Kent County, and sentenced on December 13, 2016. *See State v. Cephas*, ID #150303005476 (Del. Super.). A convicted but unsentenced inmate has the same status under the Constitution as a pretrial detainee. *See Fuentes v. Wagner*, 206 F.3d 336 (3d Cir. 2000).

1

someone in medical so that Plaintiff would be seen. Plaintiff states, "This too was unsuccessful." (D.I. 3 at 12, ¶¶ 17-20).

Plaintiff wrote to Warden Dana Metzger that he was not getting proper medical care and had not received assistance from Defendant. (*Id.* at 12). Plaintiff continued to seek treatment and file grievances. (*Id.*). Plaintiff alleges that Defendant transferred him from minimum security to medium high security (*i.e.*, "MHU") on October 18, 2017, in retaliation for the letter he sent to Warden Metzger complaining about Defendant's failure to assist Plaintiff in obtaining medical care. (*Id.* at 17, 19).

Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## FACTS AS PRESENTED BY THE PARTIES

Plaintiff frequently sought medical attention for chest pains and shortness of breath following a September 2016 surgery. (D.I. 141 at 16-24). Plaintiff has chronic obstructive pulmonary disease ("COPD") and is prescribed an inhaler, a keep on person (*i.e.*, KOP) medication. (*Id.* at 27-32, 103). Plaintiff testified that when an inmate needs a prescription refilled, the must submit a "sick call" form. (*Id.* at 102-03). An inmate must also submit a sick call slip or may ask a correctional officer when he needs medical attention. (*Id.*).

Plaintiff received medical treatment on a number of occasions between October 2016 through mid-October 2017. (*Id.* at 16-30). Plaintiff testified that he spoke to Defendant about getting medical care for a rash but does not recall the date of the conversation. (*Id.* at 100-01). Defendant does not recall having this conversation. (*Id.* at 138). Plaintiff testified that he sent a letter to the warden through the in-house prison

mail system sometime between July through September of 2017 (the "first letter") in which he told the warden that Defendant did not help him receive medical care for the rash.[4] (*Id.* at 101).

On September 26, 2017, Plaintiff filled out a sick-call form for a KOP refill and complained of chest pain, recurring rash, and itchy eyes. (*Id.* at 54, 108, 109). Plaintiff explained that he refused treatment that day even though he was having chest pains because he wanted his KOPs. (*Id.* at 108-09). On October 6, 2017, Plaintiff was having chest pains and, around 3:00 a.m., went to the correctional officer for medical attention. (*Id.* at 110). Plaintiff was seen as an emergency sick call because of the chest pain complaints he said had been occurring since the previous Saturday. (*Id.* at 18). He "continued to mention [to multiple medical staff] having KOP medications re-ordered" by the provider. (*Id.*). The medical note states that Plaintiff did not appear to be in any "distress" and he was released in stable condition. (*Id.*). Plaintiff testified that he did not ask for a medication refill. (*Id.* at 110).

On October 6, 2017, R.N. Tyler Bohanan issued Plaintiff a disciplinary report for giving a false alarm and lying because Plaintiff "abused an emergency sick call" on October 6, 2017, in an attempt to have KOP medication filled. (*Id.* at 57). The report states that Plaintiff was "aware he can request medication refills through the sick call slip as he has done this process in the past." (*Id.*). The report stated that Plaintiff had a prior incident, on February 15, 2017, "where [Plaintiff] had used an emergency sick call

---

[4] The letter was not provided to the Court. Plaintiff did not keep a copy of the letter, and the letter was not located following a search of all correspondence received by the warden in 2017. (D.I. 141 at 101, 128).

3

so that he could get his medications filled." (*Id.*). On October 18, 2017, at approximately 12:10 p.m. Plaintiff was found guilty of the violations and sanctioned to five days confinement to quarters and fifteen days loss of all privileges. (*Id.* at 59). Plaintiff's appeal was denied. (*Id.* at 59-60). Defendant had no involvement in the disciplinary action, the hearing, or appeal. (*Id.* at 138).

On October 18, 2017, at approximately 11:57 a.m., Defendant ordered Plaintiff's transfer from W1 to D-West. (*Id.* at 63). Plaintiff alleges that Defendant moved him from W1 to D-West because of the 2017 letter Plaintiff wrote to the Warden. (D.I. 3 at 17). Defendant states that he was not aware that Plaintiff had made the 2017 complaint at the time he ordered Plaintiff's transfer. (D.I. 114 at 138). Defendant states that Plaintiff was transferred to maintain prison safety and order and to ensure that Plaintiff would receive prompt and proper emergency care for his medical issues. (*Id.* at 136). Defendant states that he was concerned that Plaintiff's behavior of calling in a false alarm could disrupt prison safety and order. (*Id.*). Defendant states that he ordered Plaintiff's move "to a facility with higher security" where Plaintiff's actions and movements could be more closely monitored by security. (*Id.* at 137). Defendant states that he also ordered the move so that if Plaintiff had a true medical emergency due to his health issues, he would be minutes away from the infirmary at the D-West building and this would allow an emergency response team to reach Plaintiff more quickly than if he were housed in the W1 building. (*Id.*).

Plaintiff wrote the warden on March 30, 2018 and complained that Defendant retaliated against him because he had sent a complaint letter (*i.e.*, the first letter) about Defendant to the warden "back in August/September about my ongoing medical

4

problems." (*Id.* at 67-72). The warden investigated Plaintiff's allegations of retaliation and reprisal. (*Id.* at 65). On April 11, 2018, Scarborough provided a memorandum to the warden in response to Plaintiff's claims of retaliation. (*Id.* at 66). Defendant provided two reasons for the transfer:

> [A]s per attached 404 incident report the inmate gave false alarm (medical emergency) in order to be taken to medical so he can complain about his KOP issues. . . . [O]n the off chance that the inmate does in fact have a medical condition that may necessitate an occasional emergency response team to treat him on site; he will be located in a building much closer to the infirmary than where he was previously housed. The response time will be significantly reduced. . . . Since this order went into effect there have been no documented instances of code 4 medical emergencies involving I/M Cephas.

(*Id.* at 66). On April 24, 2018, the warden advised Plaintiff that "after investigation into your allegations of retaliation and reprisal, I do not have any cause to find truth in any of the concerns given. . . . I hope this allays your concerns into this matter and I consider it closed at this time." (*Id.* at 65).

Plaintiff submitted a grievance on November 21, 2019, complaining about the disciplinary report that he received on October 15, 2017. (*Id.* at 88-93). In much of the grievance Plaintiff complains that Defendant retaliated and had him transferred on October 18, 2017, for filing a complaint against Defendant with the warden. (*Id.* at 91-93). The grievance was returned unprocessed for several reasons including that the grievance was filed more than seven days from the date of occurrence. (*Id.* at 94-95).

Defendant moves for summary judgment: (1) on all claims against him in his official capacity; and, on the grounds that (2) Plaintiff cannot establish the essential elements of retaliation; (3) Defendant has qualified immunity; and (4) Plaintiff failed to exhaust his administrative remedies. Plaintiff responded and filed a twelve paragraph

5

declaration as well as the declaration of inmate Amir Fatir, all in opposition to Defendant's motion. (D.I. 149). Defendant moves to strike portions of the response and declarations. (D.I. 152).

## MOTION TO STRIKE

Defendant moves to strike for a number of reasons. (D.I. 152). First, Defendant moves to strike Plaintiff's response on the grounds that it exceeds the twenty page limit as set forth in this Court's Local Rules. *See* D. Del. LR 7.1.3(a)(4). Plaintiff did exceed the page limit, and by a lot of pages, although, since it is handwritten, it is difficult to compare it to the number of words that would be in twenty typed pages. I will therefore give Plaintiff latitude in this regard given his *pro se* status. This portion of the motion to strike will be denied.

Second, Defendant moves to strike paragraphs 2, 4, 5, 6, 7, 8, and 12 of Plaintiff's declaration and paragraphs 2 and 3 of Fatir's declaration. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). An affidavit which does not comply with the requirements of Rule 56 is subject to a motion to strike. *Western Mining Corp. v. Standard Terminals, Inc.*, 577 F. Supp. 847, 848 (W.D. Pa.), *aff'd*, 745 F.2d 49 (3d Cir. 1984). In supporting a motion for summary judgment, "the affiant must ordinarily set forth facts, rather than opinions or conclusions." *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985). "An affidavit that is 'essentially conclusory and lacking in specific facts' is inadequate to satisfy the movant's burden." *Id.* (citations omitted).

6

The Court will grant Defendant's motion to strike paragraphs 2, 5, 6, and 8 of Plaintiff's declaration, and otherwise dismiss the request as moot. Paragraphs 2, 5, 6, and 8 are simply statements of belief. They would not be admissible in evidence. I do not need to resolve the motion as to any of the other paragraphs. I accept as true that Plaintiff wrote the first letter and that he complained about Deputy Warden Scarborough in it.; that renders moot the request to strike paragraph 12 and paragraphs 2 and 3 of the Fatir declaration. Paragraph 4 is a comment on the evidence. I treat it as such, and there is no need to strike it. Paragraph 7 is a conclusory statement of historical fact. I do not think it is necessary to strike it, because it does not affect the legal analysis of the summary judgment motion.

## MOTION FOR SUMMARY JUDGMENT

**Legal Standards.** "Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Drumgo v. Kuschel*, 811 F. App'x 115, 117 (3d Cir. 2020) (citing Fed. R. Civ. P. 56(a)). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's

role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show that there is a "genuine issue for trial." *Id.* at 324. To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250.

There is "no genuine issue as to any material fact" if a party" "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

**Discussion**. Defendant moves for summary judgment on the ground that Plaintiff cannot prove his retaliation claim. Plaintiff argues that there are genuine issues of material fact that preclude summary judgment.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). Proof of a retaliation claim requires that a plaintiff demonstrate: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a "substantial or motivating

8

factor" in the state actor's decision to take adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) ("fact finder could conclude . . . that retaliatory continued placement in administrative confinement would 'deter a person of ordinary firmness from exercising his First Amendment rights'").

The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser*, 241 F.3d at 334.

Defendant argues that Plaintiff cannot prove the essential elements of retaliation. Plaintiff has met the first element of a retaliation claim. He testified that in his first letter to the warden he complained of Defendant's failure to see that he obtained medical care. He also met the second element (at least when viewed in the light most favorable

to Plaintiff) – he was subjected to an adverse action by a state actor when Defendant Scarborough ordered his transfer from W1 to D-West.

Plaintiff has not met the third element of a retaliation claim. The record evidence does not show that the protected activity (*i.e.*, the first letter) was a substantial or motivating factor in Defendant's decision to transfer Plaintiff to D-West. The record evidence indicates that Defendant was unaware of the first letter when he ordered Plaintiff's transfer to D-West on October 18, 2017. Plaintiff argues that because his 2018 letter to the warden was forwarded to Defendant, one must conclude that the first letter was also forwarded to Defendant. There is no record evidence to support Plaintiff's position. It is thus unrefuted that Defendant was unaware of the first letter. Plaintiff therefore has not shown that the letter was a substantial or motivating factor in Defendant's decision to transfer Plaintiff. This is fatal to Plaintiff's retaliation claim.

Assuming arguendo that Plaintiff made a prima facie case of retaliation, the record evidence demonstrates that Plaintiff was transferred for reasons reasonably related to a legitimate penological interest. Defendant's unrefuted statement is that Plaintiff was transferred to maintain prison safety and order and to ensure that Plaintiff would receive prompt and proper emergency care for his medical issues. Plaintiff argues that because Defendant ordered Plaintiff's transfer to D-West thirty minutes before Plaintiff was found guilty of the disciplinary charges, this casts doubt on Defendant's stated reasons for the transfer. The record does not support Plaintiff's position. Defendant's April 11, 2018, memorandum to the warden (D.I. 141 at 66) contains no reference to Plaintiff's finding of guilt; it refers only to the incident report that Plaintiff gave a false alarm. Defendant's declaration (id. at 136, ¶ 5) refers to the fact

that Plaintiff was found guilty of lying and giving a false alarm. It does not state that the guilty finding was the reason for the transfer.

Plaintiff also argues that Defendant's response in transferring him was overblown and exaggerated because Plaintiff never caused a Code 4 medical emergency and the reasons for the transfer are based on hypothetical reasons or events that never happened. Based upon the record evidence, as Defendant stated in his memorandum to the warden, he relied upon an incident report that Plaintiff gave a false alarm in order to be taken to medical to complain about KOP issues. Notably, the disciplinary report authored by Bohanan states that Plaintiff indicated he went to sick call to see a provider to get a refill on his KOP medications and it was Bohanan who determined that Plaintiff "abused an emergency sick call at the cost of valuable staff time and resources." Defendant's statement and his explanatory memorandum provide a logical explanation for Plaintiff's transfer.[5]

In light of the record evidence, no reasonable jury could find for Plaintiff. Accordingly, Defendant's motion for summary judgment will be granted.[6]

---

[5] Plaintiff's statement in his declaration that he "never misused the sick call process" does not create a disputed material fact because it does not dispute that R.N. Bohanan wrote him up for doing just that, and that Defendant relied upon the written report in making the transfer decision.

[6] Summary judgment is appropriate on the retaliation claim. I will not address the other grounds for summary judgment other than to note that Defendant has immunity under the Eleventh Amendment for those claims raised against him in his official capacity.

## CONCLUSION

For the above reasons, the Court will: (1) grant in part and dismiss in part Defendant's motion to strike (D.I. 152); and (2) grant Defendant's motion for summary judgment (D.I. 139).

An appropriate Order will be entered.